**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X

ABDULAI FOFANAH,                    :
                                    :
            Petitioner,             :
                                    :          No. 15 Civ. 6538 (JFK)
     -against-                      :            No. 11 Cr. 721(JFK)
                                    :          **OPINION & ORDER**
UNITED STATES OF AMERICA,           :
                                    :
            Respondent.             :
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/11/2017

APPEARANCES
FOR PETITIONER ABDULAI FOFANAH
     Pro se

FOR RESPONDENT UNITED STATES OF AMERICA
     Ian McGinley, Esq.

**JOHN F. KEENAN, United States District Judge:**

     Before the Court is Petitioner Abdulai Fofanah's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Fofanah asserts that:  (1) he was denied effective assistance of counsel in violation of the Sixth Amendment; (2) a subsequent development in the law of aiding and abetting entitles him to relief; and (3) a sentencing amendment that became effective after he was sentenced entitles him to a reduced sentence.  For the reasons stated below, Fofanah's motion is denied.

1

## I. Background

### A. Fofanah's Offense and Arrest

On four occasions in May and June of 2011, Fofanah participated in the loading of shipping containers freighted with various high-end stolen vehicles, including models produced by BMW, Porsche, and Mercedes. (See Presentence Investigation Report ¶¶ 24-26, 34 (Oct. 9, 2012) [hereinafter PSR].) Fofanah planned to export the high-end vehicles to the African nation of Guinea using certificates of title for old, used cars produced by different manufacturers. (Id. ¶¶ 19-23.) In other words, the titles did not match the vehicles that would be exported. The total market value of the stolen vehicles Fofanah attempted to export was approximately $558,000. (See Sent. Tr. at 23:3-5, Nov. 9, 2012.)

In early May 2011, Fofanah hired Fousseni Traore Sahm to assist with the loading and transportation of the shipping containers loaded with stolen vehicles. (PSR ¶ 18; Mem. of L. of the United States of America in Opp'n to Abdulai Fofanah's Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence at 5, United States v. Fofanah, No. 11 Cr. 721, ECF No. 55 (filed Dec. 29, 2015) [hereinafter Gov. Opp'n].) Unbeknownst to Fofanah, Sahm was an unpaid informant for the New York City Police Department (the "NYPD"), who alerted authorities to the

export scheme. (PSR ¶ 18.)  On May 12 and May 20, 2011, NYPD officers surveilled Fofanah and others as they loaded vehicles into shipping containers in the Bronx, New York. (Id. ¶ 29.)  On both occasions, an NYPD officer working in an undercover capacity posed as one of Sahm's workers and assisted in loading the shipping containers. (Id. ¶ 28.)  At a meeting with Sahm and the undercover officer on June 14, 2011, Fofanah explained that Guinean officials did not verify that the vehicles in shipping containers matched the vehicles declared on customs forms. (Id. ¶ 35.)  Fofanah also offered to sell luxury cars for prices well below their market value. (Id.)

When Fofanah was arrested on June 20, 2011, he had in his possession cellular telephones and numerous shipping documents tying him to the containers that had been loaded with stolen vehicles. (Trial Tr. at 138:3-144:14, July 10, 2012.)  After receiving a Miranda warning, Fofanah admitted that he knew the vehicles were "bad" and acknowledged in a written statement that he had participated in loading six shipping containers. (Id. at 144:24-146:14, 153:3-15.)

On May 2, 2012, the Government filed a superseding indictment charging Fofanah with nine counts:  one count of conspiracy to transport stolen vehicles in violation of 18 U.S.C. § 371, four counts of transportation of stolen vehicles

in violation of 18 U.S.C. § 2312, and four counts of possession

of stolen vehicles in violation of 18 U.S.C. § 2313. (<u>See</u>

Superseding Indictment ¶¶ 1-12, <u>United States v. Fofanah</u>, No. 11

Cr. 721, ECF No. 18 (filed May 2, 2012).)  With respect to the

counts for transportation of stolen vehicles and possession of

stolen vehicles, Fofanah was also charged with aiding and

abetting, under 18 U.S.C. § 2. (<u>Id.</u> ¶¶ 5-12.)

### B. Fofanah's Trial and Sentencing

At trial, the Government introduced evidence consisting of,

among other things:  (1) Sahm's testimony regarding his

interactions with Fofanah and involvement in the export scheme;

(2) testimony of the law enforcement officers who observed

Fofanah loading the vehicles into shipping containers; (3) a

video recording that captured Fofanah on one of the dates when

vehicles were loaded into shipping containers; (4) an audio

recording in which Fofanah explained to Sahm and an undercover

officer why Guinea was a good export destination and offered to

sell vehicles for below their market value; and (5) Fofanah's

post-arrest statements to law enforcement officers. (<u>See</u> Gov.

Opp'n at 3 (summarizing evidence).)

Fofanah did not testify at trial.  The defense rested after

calling one witness and requesting that the jury conduct a

visual inspection of Fofanah.

On July 16, 2012, the jury rendered a verdict and found Fofanah guilty on all nine counts. The jury found Fofanah guilty as a principal on all counts for transportation of stolen vehicles and possession of stolen vehicles in violation of 18 U.S.C. §§ 2312 and 2313. (See Trial Tr. at 700:8-24, July 16, 2012; Verdict Sheet, United States v. Fofanah, No. 11 Cr. 721, ECF No. 37 (filed July 16, 2012).)

On November 9, 2012, the Court imposed a sentence of seventy-two months' imprisonment. Pursuant to the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") and the PSR prepared by the Probation Office, the Court increased Fofanah's offense level by fourteen levels because the offense resulted in intended losses greater than $400,000 (based on the value of the stolen cars Fofanah attempted to export). See U.S.S.G. § 2B1.1(b)(1)(H) (2012).

Fofanah appealed to the Second Circuit, which affirmed the judgment and sentence of this Court on September 2, 2014. See United States v. Fofanah, 765 F.3d 141, 148 (2d Cir. 2014).

### D. Fofanah's § 2255 Motion

On August 11, 2015, Fofanah filed the instant motion to vacate, set aside, or correct his sentence. (See Mot. to Vacate Under 28 U.S.C. 2255, United States v. Fofanah, No. 11 Cr. 721, ECF No. 48 (filed Aug. 11, 2015).) Fofanah's claims include

that:  (1) he was deprived of effective assistance of counsel
because his attorney did not permit him to testify, failed to
call an allegedly key witness, and conducted an inadequate
investigation of the case; (2) the Supreme Court's decision in
Rosemond v. United States, 134 S. Ct. 1240 (2014), altered the
law of aiding and abetting in a manner favorable to Fofanah; and
(3) an amendment to the Guidelines that became effective in 2015
and revised the definition of "intended loss" compels
modification of his sentence. (See generally Mem. of L. in Supp.
of Mot. Filed Under 28 U.S.C. § 2255, ECF No. 49 (filed Aug. 11,
2015) [hereinafter Pet'r's Mem.].)

### E. Testimony of Fofanah's Trial Counsel

Fofanah was represented by Robert M. Baum throughout the
trial and sentencing.  In light of the issues raised in
Fofanah's § 2255 motion and the fact that the trial record was
generally silent as to Fofanah's claims, on October 16, 2015,
the Court ordered Baum to give sworn testimony in the form of an
affidavit addressing Fofanah's allegations of ineffective
assistance of counsel. (See Order, United States v. Fofanah, No.
11 Cr. 721, ECF No. 52 (filed Oct. 16, 2015).)  Fofanah also
executed an informed consent waiving his attorney-client
privilege with Baum. (See Attorney-Client Privilege Waiver
(Informed Consent), United States v. Fofanah, No. 11 Cr. 721,

ECF No. 53 (filed Oct. 26, 2015.).  Baum's affirmation was filed

as an exhibit to the Government's opposition brief. (See Gov.

Opp'n Ex. A [hereinafter Baum Aff.].)

Dated November 19, 2015, Baum's affirmation indicates that

Fofanah initially expressed a desire to testify on his own

behalf. (Id. ¶ 4.)  Baum advised Fofanah "that it was his

absolute right to testify," but Baum "counseled strongly against

it." (Id.)  Over approximately ten hours during two days, Baum,

an interpreter, and Baum's investigator met with Fofanah to

review his direct testimony and potential cross examination.

(Id. ¶ 5-6.)  According to Baum, several potentially detrimental

issues arose during the course of this preparation, raising

questions about Fofanah's credibility.[1] (Id. ¶ 7.)  Subsequently,

Fofanah informed Baum that he did not wish to testify. (Id. ¶

8.)  Baum "again advised [Fofanah] that he had a right to

testify if he wished but that I thought he had made the correct

decision." (Id.)

Baum also addressed the investigation that he conducted in

connection with Fofanah's case.  According to Baum, he and his

_____

[1] Specifically, Baum stated that Fofanah's answers to questions
about "potential false statements under oath in his citizenship
application," "an extremely large amount of money wire
transferred into his [bank] account in Africa," and possibly
inaccurate tax returns raised serious issues of credibility.
(Baum Aff. ¶ 7.)

7

investigator attempted to meet with Sahm—the Government's primary witness—on three occasions, but succeeded only in speaking to Sahm by telephone once. (Id. ¶ 9.) Baum investigated Sahm's background and uncovered "a variety of impeachment sources" to discredit Sahm's testimony. (Id.) Baum and his investigator also met with potential witnesses and took their statements, and visited the location where the vehicles were allegedly loaded into shipping containers. (Id. ¶¶ 10-12.)

On one occasion, Baum met and interviewed an individual whom the parties refer to as "Habib." (Id. ¶ 13.) According to Baum, Habib's "statement made it clear that he may have had criminal liability in this case," making it likely that Habib would retain counsel and possible that he would invoke his Fifth Amendment right against self-incrimination. (Id. ¶ 13.) As trial approached, Baum attempted to contact Habib by telephone, but was unsuccessful because the telephone number that Habib left was no longer in service. (Id.) Baum subpoenaed records from the telephone company, but learned that no records were available because the phone number belonged to a pre-paid telephone. (Id.) Baum's investigator also tried to locate Habib at a physical address, but was informed by witnesses that Habib had left the country and returned to Africa. (Id.)

According to Baum, Fofanah never raised an alibi defense with him. (Id. ¶ 14.) Baum explored the possibility of an alibi nevertheless, but his investigation did not "demonstrate with any degree of specificity exactly where Mr. Fofanah was if he was not at the scene of the car loadings." (Id.)

## II. Discussion

### A. Legal Standard for § 2255 Motions

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." To obtain relief under § 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Because Fofanah is appearing pro se, the Court construes his arguments liberally and interprets them to raise the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

## B. Fofanah Does Not Establish That He Received Ineffective Assistance of Counsel

Fofanah raises several arguments in support of his contention that Baum's representation was constitutionally ineffective. First, Fofanah asserts that Baum prevented him from testifying at trial. Second, Fofanah contends that Baum failed to call a witness who, according to Fofanah, would have provided exculpatory testimony. Third, Fofanah claims that Baum failed to conduct an adequate investigation of his case. The Court concludes that Fofanah's arguments do not show that he received ineffective assistance of counsel and, accordingly, do not entitle him to relief.

### 1. Applicable Law

### a. Ineffective Assistance of Counsel

Ineffective assistance of counsel is a basis for relief under § 2255 because the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. See Morales v. United States, 635 F.3d 39, 42-43 (2d Cir. 2011); see also Strickland v. Washington, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the [Sixth Amendment] right to counsel is the right to the effective assistance of counsel.'" (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970))). A claim of ineffective assistance of counsel has two components.

First, a petitioner must show that counsel's performance was deficient. <u>Strickland</u>, 466 U.S. at 687.  Second, the petitioner must show that he or she suffered prejudice as a result of counsel's deficient performance. <u>Id.</u>; <u>Tavarez v. Larkin</u>, 814 F.3d 644, 648 (2d Cir. 2016).

To satisfy the first (or deficiency) prong of the <u>Strickland</u> test, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In assessing a claim that counsel's representation did not meet the constitutional minimum, a court should "indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>see also</u> <u>Lynch v. Dolce</u>, 789 F.3d 303, 311 (2d Cir. 2015).

To satisfy the second (or prejudice) prong of the <u>Strickland</u> test, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Strickland</u>, 466 U.S. at 694.  In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>  A prejudice determination "may be made with the benefit of hindsight." <u>Lynch</u>, 789 F.3d at 311 (quoting <u>Mayo v. Henderson</u>, 13 F.3d 528, 534 (2d Cir. 1994)).

## b. The Need for an Evidentiary Hearing

Under § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, the fact that certain interactions take place off the record—for example, conversations between a criminal defendant and his attorney regarding whether to waive the right to testify[2]—does not necessarily require the Court to convene a formal evidentiary hearing with the prisoner present in order to resolve a matter raised in a § 2255 motion.

A "district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). Where, as here, a prisoner claims that his attorney prevented him from testifying and denied him effective assistance of counsel, a district court may properly request that "the record [be] supplemented by a detailed affidavit from

---

[2] Under Second Circuit precedent, there is "no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right." Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997).

trial counsel credibly describing the circumstances concerning [the criminal defendant's] failure to testify." Id. at 85.

### 2. Analysis

### a. Counsel's Alleged Refusal to Allow Fofanah to Testify

Fofanah's first ground for challenging Baum's effectiveness is that Baum "fail[ed] to permit him to testify" at trial. (Pet'r's Mem. at 12.) "[C]ounsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997). There is no contention that Baum failed to inform Fofanah of his right to testify.[3] Instead, Fofanah asserts that Baum told him that there was no need for his testimony because the Government's evidence against him was "weak." (Pet'r's Mem. at 3.) Fofanah's own account, therefore, shows that Baum did not prevent him from testifying. Rather, Fofanah's description of the events leads to the conclusion that he was "dissuaded" from testifying as a result of "arduous discussions" with his attorney.[4] See Chang, 250 F.3d at 86 n.2.

---

[3] Baum affirmed that he told Fofanah on several occasions that Fofanah had the absolute right to testify and that Baum's advice was that Fofanah should not testify. (Baum Aff. ¶¶ 4, 8.)

[4] Fofanah did not waive his right to testify on the record. See Brown, 124 F.3d at 79 ("[T]he judge need not intervene when

Furthermore, Fofanah's version of events, assuming it is accurate, does not demonstrate that Baum's performance was deficient. "[C]ounsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best[.]" Brown, 124 F.3d at 79; see also United States v. Aguirre, 912 F.2d 555, 562 (2d Cir. 1990) ("[D]efense counsel is always in a far better position to assess the wisdom of the defendant's testifying than is the trial judge."). Baum had good reason to counsel Fofanah against testifying. According to Baum, he, his investigator, an interpreter, and Fofanah met for approximately ten hours to prepare for direct and cross examination. (Baum Aff. ¶¶ 5-6.) This process highlighted several issues potentially "detrimental" to Fofanah's credibility. (Id. ¶ 7.) Under such circumstances, Baum's advice against testifying was not objectively unreasonable. See Aguirre, 912 F.2d at 562-63 (where counsel believed defendant would be "a poor witness on his own behalf," counsel's advice against testifying was reasonable).

---

counsel announces that the defendant rests and the defendant has not testified."). However, Baum affirmed that during the trial Fofanah "informed counsel that he did not wish to testify." (Baum Aff. ¶ 8.)

Even if Fofanah were to demonstrate deficient performance, he does not demonstrate that the absence of his testimony prejudiced him.  To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Fofanah's belief that his testimony "would have helped . . . his chances of acquittal," (Pet'r's Mem. at 12), does not amount to a reasonable probability of a different outcome.  Additionally, Fofanah's claim that his "testimony could not have been contradicted by any of the government's witnesses, nor could it have been subjected to vigorous cross-examination" is entirely conclusory. (Id.)  Fofanah also overlooks the substantial evidence of his guilt, which included testimony from an informant who assisted Fofanah, testimony from law enforcement officers who observed Fofanah, and incriminating video and audio recordings of Fofanah. (See Gov. Opp'n at 3 (summarizing evidence).)  The Court is persuaded that "the substance of the testimony that [Fofanah] would have given at trial would not have altered the outcome of this case." Pena v. United States, 192 F. Supp. 3d 483, 493 (S.D.N.Y. 2016).

**b. Counsel's Alleged Failure to Call Habib as a Witness**

Fofanah's next ground for challenging Baum's effectiveness is that Baum did not call a witness named "Habib", whom Fofanah claims is a "vital witness who would have provided factual background about the cars (or their alleged stolen nature)." (Pet'r's Mem. at 15.) "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). In light of its strategic dimensions, "counsel's decision as to whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (internal quotation marks omitted). "Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Id.

Fofanah does not establish that Baum's inability to secure Habib's testimony constitutes deficient performance. Contrary to Fofanah's conclusory contention that Baum did not even interview Habib, (Pet'r's Mem. at 16), Baum conducted an interview with Habib at an early stage. (Baum Aff. ¶ 13.)

Although the interview gave Baum reason to doubt that Habib
would ultimately be a helpful witness,[5] as trial approached Baum
nevertheless attempted to contact Habib by: (1) calling a
telephone number that Habib provided; (2) subpoenaing records
from the telephone company that operated Habib's telephone; and
(3) visiting a physical address that Habib provided. (Id.)
However, the telephone number Habib provided was not in service,
the telephone company had no records, and witnesses said that
Habib had "left the country and returned to Africa." (Id.)
Under such circumstances, Baum's efforts to secure Habib's
testimony were not objectively unreasonable. See Butts v. Artuz,
No. 03-CV-5941(JG), 2005 WL 503939, at *7 (E.D.N.Y. Feb. 2,
2005) (counsel's representation not objectively unreasonable
where witness "actively avoided the investigator").

Moreover, Fofanah does not demonstrate that the absence of
Habib's testimony prejudiced him. Fofanah's claim that "there
is a strong probability that Habib's testimony would have
changed the outcome of the trial" is conclusory and self-
serving. (Pet'r's Mem. at 15.) Especially given the
Government's strong evidence against him, Fofanah's speculation

---

[5] According to Baum, Habib's statement "made it clear that he may
have had criminal liability in [the] case" that might lead him
to invoke his Fifth Amendment right against self-incrimination.
(Baum Aff. ¶ 13.)

about the significance of Habib's testimony falls short of showing a "reasonable probability that . . . the result of the proceeding would have been different," Strickland, 466 U.S. at 694, if Habib had testified.

### c. Counsel's Alleged Failure to Investigate

Fofanah's final ground for challenging Baum's effectiveness is his claim that Baum conducted an inadequate investigation with respect to his case.  The duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Greiner, 417 F.3d at 320-21 (quoting Strickland, 466 U.S. at 691).  "The reasonableness of an investigation is obviously a reflection of the facts of a case" and, therefore, is a case-by-case examination. Id. at 321.  "Strategic decisions based on a thorough investigation of the relevant law and facts are 'virtually unchallengeable' and even decisions grounded on an incomplete investigation are countenanced if 'reasonable professional judgments support the limitations on investigation.'" United States v. Daugerdas, 915 F. Supp. 2d 493, 496 (S.D.N.Y. 2013) (quoting Strickland, 466 U.S. at 690-91).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all

the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Fofanah first argues that "a simple investigation" would have revealed that Sahm, a witness for the Government, gave "false and contradictory testimony" at trial. (Pet'r's Mem. at 14.) In essence, Fofanah complains that Baum's allegedly faulty investigation compromised Baum's ability to impeach Sahm's testimony. (Id.) However, whereas Fofanah's allegations that Baum did not investigate Sahm are conclusory, Baum's affirmations to the contrary are specific and credible. (See Baum Aff. ¶ 9 (stating that Baum spoke with Sahm by telephone on one occasion despite Sahm's refusal to meet with Baum and that Baum "thoroughly investigated the background of Mr. Sahm including his prior arrest").) Accordingly, Fofanah's allegations regarding Baum's investigation of Sahm do not establish deficient performance.

Fofanah next argues that a "reasonable investigation by counsel would have provided an [sic] alibi evidence." (Pet'r's Mem. at 14.) However, the duty to investigate does not "compel defense counsel to investigate comprehensively every lead or possible defense[.]" Greiner, 417 F.3d at 321. Moreover, the "bald assertion that counsel should have conducted a more thorough pre-trial investigation fails to overcome the

presumption that counsel acted reasonably." <u>Matura v. United States</u>, 875 F. Supp. 235, 237 (S.D.N.Y. 1995). Here, Baum affirmed that Fofanah "never raised an alibi defense with counsel." (Baum Aff. ¶ 14.) Even so, Baum explored the possibility of an alibi, but did not discover "sufficient evidence to demonstrate with any degree of specificity exactly where Mr. Fofanah was if he was not at the scene of the car loadings." (<u>Id.</u>) Accordingly, Fofanah's allegations regarding Baum's investigation of an alibi do not establish deficient performance.

Finally, Fofanah claims that Baum failed to utilize a "private investigator or an expert who could have provide[d] a favorable opinion about the most important questions" in the case. (Pet'r's Mem. at 14.) Fofanah's conclusory contention is flatly contradicted by the specific and credible contents of Baum's affidavit. In fact, Baum did retain an investigator, who assisted by meeting with witnesses, obtaining copies of relevant documents, and visiting and photographing relevant locations. (Baum Aff. ¶¶ 9-12.) Baum also hired an expert in voice identification in connection with Fofanah's case. (<u>Id.</u> ¶ 15.) Accordingly, Fofanah's allegations regarding Baum's failure to retain an investigator or expert do not establish deficient performance.

Once again, even if Fofanah were to establish that Baum's performance was deficient, he does not demonstrate prejudice. In light of the Government's strong evidence against him, Fofanah simply does not show that, but for Baum's allegedly faulty investigations, there is a "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The plain fact is that Robert M. Baum is an experienced and most competent trial lawyer and that in this overpowering prosecution case he comported himself in a highly professional manner in all respects.

## C. Subsequent Developments in the Law of Aiding and Abetting Do Not Entitle Fofanah to Relief

Fofanah also contends that the Supreme Court's decision in Rosemond v. United States, 134 S. Ct. 1240 (2014), entitles him to relief because that decision altered the federal law of aiding and abetting. (Pet'r's Mem. at 6-10.) Fofanah overlooks that the jury found him guilty on all relevant counts as a principal, not as an aider and abettor. Accordingly, the Court rejects Fofanah's argument.

### 1. Applicable Law

Section 2 of Title 18 of the United States Code is the federal aiding and abetting statute. See Rosemond, 134 S. Ct. at

21

1243.  It provides that:  "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.  A person "is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond, 134 S. Ct. at 1245.  Section 2 reflects the long-held common law view that "a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." Id.

In Rosemond, the Supreme Court considered the question of how the "affirmative act and intent" elements "apply in a prosecution for aiding and abetting" an 18 U.S.C. § 924(c) offense. Id.  Section 924(c) prohibits the use or carriage of a firearm "during and in relation to any crime of violence or drug trafficking crime." Id. at 1243 (internal quotation marks omitted).  With respect to the intent element required for liability under § 2, the Supreme Court held that "an unarmed accomplice cannot aid and abet a § 924(c) violation unless he has foreknowledge that his confederate will commit the offense with a firearm." Id. at 1249 (internal quotation marks omitted).  Without such "advance knowledge," "the defendant has not shown the requisite intent to assist a crime involving a gun." Id.

22

## 2. Analysis

Fofanah's argument that <u>Rosemond</u> has any relevance to his case is meritless.  The jury found Fofanah guilty as a principal under 18 U.S.C. §§ 2312 and 2313. (<u>See</u> Trial Tr. at 700:8-24; Verdict Sheet, ECF No. 37.)  Fofanah was not found guilty for aiding and abetting under 18 U.S.C. § 2 on any of the counts charged.  Accordingly, <u>Rosemond</u> has no application here and does not entitle Fofanah to any relief.

## D. Fofanah Is Not Entitled to a Sentence Reduction

Fofanah also asserts that his sentence should be reduced because Amendment 792 to the Guidelines—made effective subsequent to Fofanah's sentencing—revised the definition of "intended loss."  Fofanah contends that the relevant amended language applies retroactively and to his benefit.  The Court concludes that, even if Amendment 792's revised definition of "intended loss" applies retroactively, it does not compel a reduction of Fofanah's sentence.

## 1. Applicable Law

According to the Guidelines, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11 (2016); <u>see also</u> <u>United States v. Adeniyi</u>, 912 F.2d 615, 618 (2d Cir. 1990).  In 2012, when Fofanah was sentenced, the Guidelines defined "intended loss" as

the "pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1, Application Note 3(A)(ii) (2012). On November 1, 2015, Amendment 792 to the Guidelines became effective. See U.S.S.G. Supp. to App. C, amend. 792 (2015).  As relevant here, Amendment 792 revised the definition of "intended loss" to "the pecuniary harm that the defendant purposely sought to inflict[.]" U.S.S.G. § 2B1.1, Application Note 3(A)(ii) (2015).  The purpose of the United States Sentencing Commission (the "Sentencing Commission") in revising the definition of "intended loss" was to bring the federal courts into conformity with the subjective approach followed by the Second Circuit, among other circuits. See U.S.S.G. Supp. to App. C, amend. 792 (2015) (noting split among federal courts of appeals and adopting approach requiring a subjective inquiry).

Section 1B1.10 of the Guidelines addresses the circumstances under which a court may modify a defendant's sentence when a subsequent amendment has the effect of revising the defendant's sentencing range.  Subsection 1B1.10(d) identifies the specific amendments that constitute grounds for a modification of sentence. See U.S.S.G. § 1B1.10, Application Note 1(A) (2016) ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d)[.]").  Section 1B1.10 "mandates that only certain

amendments—those listed in § 1B1.10(d)—may be applied when considering a sentence reduction under Section 3582(c)(2). If an amendment is not included in § 1B1.10(d), the analysis ends, and the moving defendant is not eligible for a sentence reduction." United States v. Fedeson, 09-CR-402(WMS), 2017 WL 3431401, at *2 (W.D.N.Y. Aug. 10, 2017) (citation omitted).

Sentencing amendments that are not specifically identified in § 1B1.10(d) may apply retroactively, however, "if they clarify the operation of the Guidelines rather than effecting a substantive change of the law." Cook v. United States, Nos. 89 Cr. 346(SWK), 03 Civ. 7922(SWK), 2006 WL 3333068, at *3 (S.D.N.Y. Nov. 15, 2006). Accordingly, "[a] defendant sentenced under one version of the Guidelines may . . . be given the benefit of a later revision if the revision represents not a substantive change, but merely a clarification of the Sentencing Commission's prior intent." United States v. Kim, 193 F.3d 567, 578 (2d Cir. 1999).

## 2. Analysis

When Fofanah was sentenced on November 9, 2012, a fourteen-level enhancement was applied to his offense level for causing an "intended loss" of greater than $400,000. (See Sent. Tr. at 16:6-7, 23:3-6.) Neither the 2015 Guidelines nor the current version of the Guidelines identifies Amendment 792 as a basis

25

for modifying a defendant's sentence. See U.S.S.G. § 1B1.10(d) (2015); see also U.S.S.G. § 1B1.10(d) (2016). Accordingly, under § 1B1.10, Fofanah cannot benefit from a modified sentence by way of reference to Amendment 792.

However, Fofanah contends that he is entitled to relief because the adjusted definition of "intended loss" in Amendment 792 was a clarifying, rather than a substantive, amendment. (See Pet'r's Mem. at 17.) According to Fofanah, the revised definition of "intended loss" in Amendment 792 worked a change in his favor by directing courts to examine a defendant's subjective intent. (Id.) Fofanah now claims that he is entitled to a sentence modification because "evidence at . . . trial sufficiently established that [he] never subjectively and purposely intended to inflict any loss in the offense." (Id.) Fofanah implicitly contends that the Court did not consider his subjective intent in determining the "intended loss" for sentencing purposes.

Even assuming that the revised definition of "intended loss" set forth in Amendment 792 is a clarifying amendment that may be applied retroactively, the Court is not persuaded that its application compels reducing Fofanah's sentence. In 2012, when Fofanah was sentenced, the Second Circuit already called for an examination of a defendant's subjective intent to

26

determine the "intended loss" under § 2B1.1. See United States
v. Confredo, 528 F.3d 143, 152 (2d Cir. 2008) (remanding to
district court for determination of whether defendant had
"proven a subjective intent to cause a loss of less than the
aggregate amount" of fraudulent loans).  Thus, rather than alter
the law or practice of courts in this Circuit, the Sentencing
Commission endorsed the local approach by revising the
definition of "intended loss" in Amendment 792.  It follows that
the revised definition of "intended loss" does nothing to
entitle Fofanah to relief.

Moreover, Fofanah is mistaken to the extent that he argues
that evidence at trial did not sufficiently establish that he
"subjectively and purposely intended to inflict any loss in the
offense." (Pet'r's Mem. at 17).  As the Court stated at
Fofanah's sentencing, the evidence at trial showed that he
attempted to export various "stolen high-priced cars that were
going to be resold in Africa." (Sent. Tr. at 13:3-4.)  Indeed,
Fofanah was convicted by a jury of conspiracy to transport
stolen vehicles, transportation of stolen vehicles, and
possession of stolen vehicles. See 18 U.S.C. §§ 371, 2312, 2313.
Such an endeavor is simply incompatible with the notion that
Fofanah did not at the same time intend to deprive the true
owners of the value of their vehicles.  Furthermore, Fofanah's

27

attorney argued at sentencing for a variance but conceded that "intended loss certainly is appropriate" to consider. (Sent. Tr. at 16:16-17.) Accordingly, Fofanah is not entitled to a reduced sentence.

### E. Fofanah's Requests for Discovery Are Denied

In his reply, Fofanah requests for the first time that various documents be produced to him. Generally, Fofanah requests documents created or obtained by Baum in the course of his representation of Fofanah and investigations on Fofanah's behalf. The Court declines to authorize discovery because Fofanah has not demonstrated that the requested documents would support any of the claims presented in his petition.

### 1. Applicable Law

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Pizzuti v. United States, 809 F. Supp. 2d 164, 175 (S.D.N.Y. 2011) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Rule 6(a) of the Rules Governing Section 2255 Proceedings requires leave of the court to conduct discovery, which may be granted for good cause. See Lewal v. United States, No. 97-2248, 1998 WL 425877, at *2 (2d Cir. June 9, 1998) ("Rule 6(a) of the Rules Governing Section 2255 Proceedings . . . provides that a § 2255 petitioner is entitled to undertake

discovery only when the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." (internal quotation marks omitted) (summary order)). To show "good cause,"

> a petitioner must present specific allegations that give the court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.  A court may deny a petitioner's request for discovery where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition.

Martin v. United States, 834 F. Supp. 2d 115, 140 (E.D.N.Y. 2011) (citations and internal quotation marks omitted).

## 2. Analysis

As mentioned above, Fofanah, in his reply, requests for the first time that various documents be produced to him.  Fofanah's requests include:  (1) all subpoenas Baum prepared as well as any documents obtained through such subpoenas; (2) documents related to, and produced by, the expert witness in voice identification whom Baum retained; (3) copies of personal documents (including records related to Fofanah's citizenship application, bank wire transfers, and tax returns) that, according to Baum, might have presented credibility issues if Fofanah had testified; (4) all witness statements; and (5) "all

29

the documentary and other evidence of investigations . . . which [Baum] claims to have conducted." (Pet'r's Reply Mem. at 2-3.)

However, Fofanah does not provide "specific evidence that the requested discovery would support" his petition. <u>Martin</u>, 834 F. Supp. 2d at 140 (internal quotation marks omitted).  Fofanah indicates his desire to "review" the requested documents, (Pet'r's Reply Mem. at 2), but presents no specific allegations that the requested discovery would enable him to show that he is entitled to relief on any of the claims asserted in his petition.  Moreover, other courts in this District have declined to authorize discovery where a habeas petitioner's substantive claims were also denied. <u>See</u> <u>Khan v. United States</u>, Nos. 11 Civ. 7613(LAP), 07 Cr. 711(LAP), 2014 WL 2111677, at *12 (S.D.N.Y. Apr. 28, 2014) (denying discovery request and collecting cases). Accordingly, the Court declines to authorize Fofanah's discovery requests.

## Conclusion

For the reasons above, Fofanah's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because Fofanah has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2);

Krantz v. United States, 224 F.3d 125, 127 (2d Cir. 2000).

Further, the Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that any appeal from this Order would not be taken

in good faith. See Coppedge v. United States, 369 U.S. 438, 444-

45 (1962).

The Clerk of the Court is respectfully directed to

terminate the motions docketed at ECF Nos. 48 and 58 in Case No.

11 Cr. 721(JFK). The Clerk of the Court is also respectfully

directed to close Case No. 15 Civ. 6538(JFK).

**SO ORDERED.**

Dated:     New York, New York
           October 11, 2017

                                    _John F. Keenan_____
                                        John F. Keenan
                                   United States District Judge